UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| KATMAI SUPPORT SERVICES, LLC, and | ) | |
| KATMAI INFORMATION | ) | |
| TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:15-CV-014-HBG |
| | ) | |
| KNOXBI COMPANY, LLC, and | ) | |
| CARNEGIE MANAGEMENT & | ) | |
| DEVELOPMENT CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 24].

Now before the Court is Defendant/Counter-Plaintiff Knoxbi Company, LLC's and Defendant Carnegie Management & Development Corporation's Motion for Summary Judgment and Motion for Partial Summary Judgment on Knoxbi's Counterclaim [Doc. 56].[1] The Plaintiffs filed a response [Doc. 74] to the Motion, and the Defendants filed a Reply [Doc. 77]. The Motion is now ripe for adjudication. For the reasons explained below, the Court finds the Motion for Summary Judgment and Motion for Partial Judgment on Knoxbi's Counterclaim [**Doc. 56**] to be **GRANTED IN PART AND DENIED IN PART**.

---

[1] For purposes of clarity, the Court will refer to Katmai Support Services, LLC, and Katmai Information Technologies, LLC, as "Plaintiffs" and Knoxbi Company, LLC, and Carnegie Management & Development Corporation as "Defendants."

# I.     BACKGROUND

The Complaint in this matter was filed on January 13, 2015, [Doc. 1] and later amended on January 27, 2015. [Doc. 10]. The Amended Complaint alleges that the Plaintiffs entered into multiple contracts with Defendant Carnegie Management & Development Corporation ("Carnegie") for services in connection with an office building located in Knoxville, Tennessee ("Property"). The Property was leased to or otherwise exclusively occupied by the United States Government.  The Plaintiffs allege that they satisfactorily furnished certain services, work, and/or materials to Defendant Carnegie in furtherance of its contracts for the benefit of Defendant Carnegie. The Plaintiffs state that while Defendant Carnegie has paid substantial sums to them, it is indebted to Plaintiff Katmai Support Services, LLC ("KSS") in the principal amount of $103,364.00, and indebted to Plaintiff Katmai Information Technologies, LLC ("KIT") in the principal amount of $33,596.84.  The Plaintiffs claim that the United States Government paid Defendant Carnegie for the amounts presently due and payable to the Plaintiffs but that Defendant Carnegie has not remitted those sums to the Plaintiffs. The Plaintiffs allege breach of contract/guaranty and breach of trust and plead in the alternative, promissory estoppel and unjust enrichment.

On February 18, 2015, the Defendants filed a Motion for Judgment on the Pleadings, which the Court converted to a Motion for Summary Judgment [Doc. 34]. On September 29, 2015, the Court found that the Plaintiffs engaged in contracting in Tennessee during the relevant period, without qualification and licensing to engage in contracting. Based on this finding, the Court ordered that the allegation relating to Plaintiffs' breach of contract claim, ¶ 21, and the damages allegations contained in their Ad Damnum, ¶¶ 2, 3, 4, 5, 6, be stricken and replaced with the allegation that KIT and KSS are entitled to actual documented expenses that they

demonstrate by clear and convincing proof, after giving credit for all payments made by Defendant(s). In addition, the Court dismissed the Plaintiffs' claims for unjust enrichment, promissory estoppel, and breach of trust.

The Defendants have now moved for summary judgment.

## II.     POSITIONS OF THE PARTIES

The Defendants request that the Court dismiss the Plaintiffs' First Amended Complaint in its entirety for its failure to document actual expenses incurred in this action by clear and convincing evidence and beyond what Plaintiffs have already been paid. In addition, the Defendants request that the Court enter an order of partial summary judgment on its counterclaim upon a theory of unjust enrichment and award it the amount of overpayment paid to the Plaintiffs over and above the amounts documented by clear and convincing evidence. Finally, the Defendants request that the Court grant summary judgment against Defendant Carnegie because Plaintiffs have no cause of action under Tennessee Code Annotated § 62-6-103(b) against Defendant Carnegie as an agent. The Defendants argue that the only recovery that can be had is against Defendant Knoxbi, the owner and disclosed principal.

For grounds, the Defendants argue that the Plaintiffs are only entitled to their actual documented expenses as unlicensed contractors. The Defendants assert that the actual documented expenses total $101,780.01, but the Plaintiffs have acknowledged they have received $144,931.20. The Defendants aver that Defendant Knoxbi is entitled to recover the overpayment under a theory of unjust enrichment. Finally, the Defendants assert that the Plaintiffs executed documents that their contracts were directly with Defendant Knoxbi and that there was no intent for Defendant Carnegie to be bound.

The Plaintiffs filed a Response [Doc. 74] objecting to the Defendants' Motion. The Plaintiffs assert that there is a question of fact concerning whether the documented out of pocket costs incurred by them exceed the sums paid by the Defendants. The Plaintiffs allege that they are owed $58,111.89. The Plaintiffs assert that even if there were payments by the Defendants in excess of the documented expenses, the Defendants cannot recoup the difference. Finally, the Plaintiffs submit that there is a question of fact as to whether Defendant Carnegie is liable to the Plaintiffs.

The Defendants filed a Reply [Doc. 77] arguing that under Tennessee law, Plaintiffs' contractual rights, if any, are completely obliterated. The Defendants assert that actual documents are the only competent proof. The Defendants aver that they may recover the overpayment through the Tennessee Consumer Protection Act and through the common law right of recovery for unjust enrichment. Finally, the Defendants assert that Defendant Carnegie was the agent manager for Defendant Knoxbi and that the Court should grant summary judgment in its favor and dismiss Defendant Carnegie from this lawsuit.

## III.  STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 n. 2 (1986); Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Burchett v. Kiefer, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." Curtis v. Universal Match Corp., 778 F. Supp. 1421, 1423 (E.D.Tenn.1991) (citing Celotex, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. Anderson, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. Id. at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

IV.    **ANALYSIS**

The Court will address the Defendants' arguments in turn.

A.    **Actual Documented Expenses**

The Court has already determined that during the relevant time period the Plaintiffs engaged in contracting without qualification and licensing. Pursuant to Tennessee Code Annotated § 62-6-103(b), "Any contractor required to be licensed under this part who is in

5

violation of this part or the rules and regulations promulgated by the board shall not be permitted to recover any damages in any court other than actual documented expenses that can be shown by clear and convincing proof." Accordingly, because the Plaintiffs were not contractors during the relevant time period, they are only entitled to their actual documented expenses that can be shown by clear and convincing evidence.

The term "actual documented expenses" is not defined in Tennessee Code Annotated § 62-6-103. Prior to the enactment of the statute, the Tennessee Supreme Court defined "actual expenses" to be in the form of labor and materials. Gene Taylor & Sons Plumbing Co., Inc. v. Cordondolet Realty Trust, 611 S.W.2d 572, 577 (Tenn. 1981). The court explained, "These expenses should not include any amounts which consist of profit under the contract. In all events, recovery should be limited by the contract price unless the appellant can show by clear and convincing proof that labor and material were expended in addition to that required by the contract." Id. In a footnote, the court addressed Tennessee Code Annotated § 62-6-103, stating as follows:

> T.C.A. § 62-603(c) permits an unlicensed general contractor to recover actual documented expenses upon a showing of clear and convincing proof. Although this statute is inapplicable to the instant case, since it did not become effective until March 27, 1980, our holding with regard to the measure of recovery is consistent with the legislative intent expressed therein.

Id. at 577; see also Brandon v. Wright, 838 S.W.2d 532, 535 (Tenn. Ct. App. 1992) (explaining that the facts in Gene Taylor & Sons Plumbing arose prior to the enactment of the statute, "but the Supreme Court acted in accordance with the principles incorporated in said statute and held that an unlicensed subcontractor was entitled to recover actual expenses in the form of labor and materials expended on the project as shown by clear and convincing proof"). Later, in Winter v. Smith, 914 S.W.2d 527, 540 (Tenn. Ct. App. 1995), the court noted that "actual documented

6

expenses" included "all documented expenses that an unlicensed contractor has actually incurred in connection with the work." Consistent with the above opinions, the Court will award actual documented expenses but not profit or overhead.

The parties have agreed that the Defendants paid the Plaintiffs a total of $144,931.20. [Docs. 56 & 74]. The Plaintiffs assert that they have been underpaid for their actual documented expenses, while the Defendants argue that this amount is an overpayment of the Plaintiffs' actual documented expenses. The Court will now address each project as presented in the parties' briefs.

(a)     *Pressure Washing Retaining Walls*

The Defendants assert that the Plaintiffs never supplied back-up documentation for the work that was performed although Plaintiffs sent an invoice to the Defendants for $7,082.82. In addition, the Defendants assert that they never authorized the work and that the Plaintiffs were paid by the General Services Administration ("GSA") for pressure washing the retaining walls.

The Plaintiffs respond that email communications between David Taft, Louis Morgan, and Mary Khouri establish that the Plaintiffs were authorized to pressure wash the retaining walls. The Plaintiffs assert that the documented expenses equal $4,845.00, which includes an invoice from Service One in the amount of $4,250.00 and labor expenses for James (Keith) Manes in the amount of $595.00. [Doc. 75-2 at 16].

In Defendants' Reply, they assert that an internal inquiry from Plaintiffs' Accounting Department shows that Louis Morgan provided a listing where he wrote, "No Work" for this item. In addition, the Defendants argue that this work should have been included in a prior lawsuit filed by Service One, but now it is barred by res judicata.

The Court will address the Defendants' res judicata argument below. See Section IV, A(h). With respect to whether the work was authorized, the Plaintiffs submit an email dated April 23, 2012, from David Taft[2] to Louis Morgan[3] that states as follows: "You are correct that I instructed you to pressure wash the retaining walls." [Doc. 75-2 at 10]. Later, in July 2012, there were emails exchanged between the parties that suggest there was a dispute about the total amount of the invoice, not that the work was actually performed. [Doc. 75-2 at 11-17]. Contrary to the Defendants' assertions, the work was at least authorized.

The invoice for pressure washing the retaining walls is dated June 13, 2012. [Doc. 58 at 60]. The total amount due as reflected on the invoice is $7,032.82. The Defendants argue that GSA paid this invoice to the Plaintiff and cites to several documents that purportedly show that GSA paid for the pressure washing. The Court has reviewed these documents [Doc. 58 at 134, 136, 143, and 153] and finds that the documents do not show whether GSA has actually paid this amount. GSA certainly references pressure washing the retaining walls, for which the amount is $7,329.00, but it is unclear if this particular invoice was actually paid. To be clear, one document, that was not cited by the Defendants, Doc. 58 at 154, states as follows:

Pressure Wash Exterior Retainer Walls    $7,329.98    Information taken from contract GS-04P-13-EX-C-00070        awarded 6-19-13.

However, it is unclear why the invoice amount is lower than what GSA purportedly paid and whether GSA actually paid any amount. Accordingly, the Court cannot find that the Defendants are entitled to summary judgment as a matter of law on this issue.

---

[2] According to David Taft's Affidavit [Doc. 58 at 1], he is the Vice President of Development and Construction for Defendant Carnegie.
[3] According to Louis Morgan's Affidavit [Doc. 75-2 at 1], he is the regional manager for the Plaintiffs.

*(b)*     *Exhaust Fan Repairs*

The Defendants argue that the Plaintiffs never documented that the work had actually been performed or that the Defendants had authorized such work. The Defendants assert that the invoice was $5,816.07, but GSA paid the Plaintiffs for the exhaust fan repairs. The Plaintiffs respond that in an email exchange, David Taft asked Louis Morgan "to annex exhaust fans into the RTU." The Plaintiffs agree that there are no documented labor expenses but argue that Service One submitted an invoice for $11,248.04. In their Reply, the Defendants assert that this claim is barred by res judicata.

With respect to whether the Defendants authorized the work, the Plaintiffs point to an email [Doc. 75-2 at 19-20] dated February 13, 2012, between Louis Morgan and David Taft. The Court has reviewed the email and finds that this email creates a genuine issue of material fact as to whether the work was authorized. With respect to the actual documented expenses, Plaintiffs agree that there are no actual documented expenses for labor. However, the Plaintiffs point to an invoice from Service One [Doc. 75-2 at 18] in the amount of $11,248.04 as their actual documented expenses. In response, the Defendants claim that GSA paid $4,159.51 [Doc. 58 at 144] for the exhaust fan repairs. Accordingly, the Court finds that there is a genuine issue of material fact as to whether GSA paid for the exhaust fan repairs and the amount of actual documented expenses.

*(c)*     *Concrete Berms for Water Diversion*

The Defendants argue that the Plaintiffs never documented whether work on the concrete berms for water diversion was ever authorized by the Defendants or that the work had actually been performed. The Defendants assert that Plaintiffs sent an invoice for $4,969.52 [Doc. 58 at 86] but failed to provide owner authorization for the work. The Plaintiffs submit that Service

9

One submitted an invoice in the amount of $3,424.00 for this project [Doc. 75-2 at 21]. The Plaintiffs state that there are no documented labor expenses for this project but that they are entitled to $3,424.00 because the Defendants retained the benefit of performance.

In his Affidavit, David Taft states, "[N]o contract between the Plaintiffs and Knoxbi ever formed." [Doc. 58 at 11]. The Plaintiffs failed to respond to this statement or produce any evidence to the contrary. Accordingly, the Court finds the actual documented expenses to be $0.00.

(d)     *Install Switch in the ERT Auto Bay*

The Defendants argue that the Plaintiffs' invoice for installing the switch was for $1,846.27, but they failed to document whether Defendants had authorized the work or whether the work had actually been performed. The Defendants assert that it is unclear whether GSA paid for such charge, but Service One summited an invoice in the amount of $1,014.53 for "Install Switch in the ERT Auto Bay," and included this invoice in its mechanic's lien claim. The Defendants assert that Service One sued to enforce its lien but waived the claim in exchange for a release. The Defendants assert that the $1,014.53 must be excluded for lack of documentation by clear and convincing evidence.

The Plaintiffs agree that Service One submitted an invoice in the amount of $1,014.53 [Doc. 58 at 67]. The Plaintiffs argue that it is entitled to this amount since the Defendants retained the benefit of performance.  In its Reply, the Defendants assert that this claim is barred by res judicata because Service One included this work in its mechanic lien but failed to pursue this claim to judgment.

With respect to the res judicata argument, the Court finds it not applicable for the reasons explained below. See Section IV, A(h). With respect to whether the Plaintiffs were authorized to

install the switch, the Court cannot find as a matter of law that they were not authorized. Although the Plaintiffs failed to respond to this argument, the Defendants failed to set forth any evidence that the work had not been authorized. Accordingly, the Court finds a genuine issue of material fact exists as to whether this work was authorized and the actual documented expenses for the work.

(e)     *Repair Electrical in the ELSUR 2051*

The Defendants assert that the Plaintiffs sent them an invoice for repairing the electrical system in the amount of $2,108.12, [Doc. 58 at 68-69], but Plaintiffs failed to document whether the work had actually been performed or whether Defendants had authorized such work. The Defendants assert that it is unclear whether GSA paid this invoice. In response, the Plaintiffs assert that while there are no actual documented labor expenses on this project, Service One submitted an invoice for $1,014.53 [Doc. 58 at 67]. The Plaintiffs argue that it is entitled to this amount since the Defendants retained the benefit of performance. In its Reply, the Defendants argue that this claim is barred by res judicata.

In David Taft's Affidavit, he states, "[T]he owner never authorized this work to be performed and a contract never formed between the parties for performance of this work." [Doc. 58 at 9]. The Plaintiffs failed to respond to this statement or produce any evidence to the contrary. Accordingly, the Court finds the actual documented expenses to be $0.00.

(f)     *Supervision of the Sinkhole Work*

The Defendants assert that the Plaintiffs sent them an invoice for supervising the work on the sinkhole in the amount of $2,700.00 [Doc. 58 at 97]. However, the Defendants argue that the Plaintiffs have never provided documentation that the work was ever performed. The Plaintiffs failed to respond to this allegation and failed to assert what amount, if any, they are entitled for

such work.  Accordingly, the Court finds that the actual documented expenses for supervising the sinkhole is $0.00.

(g)     *Marble Tile Repairs*

The parties agree that the actual documented expenses for materials are $1,200.00 [Doc. 58 at 64] and that the actual documented labor expenses are $731.00 [Doc. 58 at 122]. However, the Defendants assert that the parties entered into a "cost-not-to-exceed" contract, and the parties agreed not to exceed $1,200.00. The Plaintiffs did not respond to the Defendants' allegation that the parties entered into a cost-not-to exceed contract but maintain that the actual documented expenses for this project equal $1,931.00.

In support of their argument, the Defendants cite to an email dated March 30, 2012, from David Taft to Louis Morgan. The email, in relevant part, states, "You have previously been released to replace up to 24 pieces of tile in the Lobby and elevator for a cost of $1,200.00. I understand this work will be completed by 4/3/2012." [Doc. 58 at 162].  Because the Plaintiffs failed to respond to this argument, the Court will enforce the parties' agreement and find that the Plaintiffs are only entitled to $1,200.00 for repairing the marble tiles.

(h)     *Security Barrier Gate Repair*

The Defendants argue that on June 29, 2012, Service One executed a Conditional Waiver and Release of Progress Payment, accepting the sum of $33,376.77 as payment in full and release of the remaining balance for its invoice in the amount of $96,556.48. [Doc. 58 at 157]. The Defendants assert that added to this amount is an invoice from Service One in the amount of $897.96 [Doc. 58 at 19] and actual hours and labor expenses in the amount of $605.76 for Louis

Morgan, $292.32 for Dennis Carwile, and $22.12 for March Gooding. [Doc. 58 at 99].[4] Thus, the Defendants assert that the allowable expenses for this project are $35,194.93.

The Plaintiffs submit that Service One remains unpaid in the amount of $63,179.71. The Plaintiffs argue that the Defendants have erroneously relied upon a partial lien waiver for progress payment executed by Service One and a non-suit by service. The Plaintiffs submit that the title, "Conditional Waiver and Release on Progress Payment" indicates that this is a waiver on a progress payment, not a final payment. The Plaintiffs submit that Service One filed a lawsuit but dismissed them on September 8, 2014, "without prejudice to the refilling of the same." The Plaintiffs state that no compromise has been made by Service One.

The Court has reviewed the Conditional Waiver and Release on Progress Payment ("Release") [Doc. 58 at 157] and finds it ambiguous. As the Plaintiffs have argued, the title of the document references a "Progress Payment." The Release later states: "To the following extent: This release covers a progress payment for all labor, services, equipment or material furnished to the jobsite or to KATMAI SUPPORT SERVICES" through the date of June 14, 2012. The Court finds that at this stage, it is unclear whether Service One agreed to waive the entire invoice or whether to accept a partial payment at that time. Because the Court finds that the Release is ambiguous, it does not need to address the Defendants' parole evidence arguments in its Reply Brief.

In its Reply, the Defendants assert that res judicata precludes Service One from seeking recovery against the Plaintiffs for any amount on this project. For grounds, the Defendants assert that four months after the execution of the Release, Service One filed suit against both the Plaintiffs and Defendant Knoxbi. The Defendants submit that Service One's lawsuit sought to

---

[4] The Court has reviewed the invoice [Doc. 58 at 99], and it shows $605.77 for Louis Morgan and $292.31 for Dennis Carwile. There are no expenses for March Gooding on this invoice.

collect unpaid amounts for the project, including, but not limited to, "Sanitary and Concrete Work," "Install Switch for Lights in ERT Auto Bay," "Paint Kitchen, Water Leak, and Remove Mulch," and "Replace Motherboard for Gate." The Defendants state that on May 10, 2013, Service One dismissed Defendant Knoxbi in exchange for a release. Later, on September 9, 2014, Service One voluntarily dismissed all remaining claims against the Plaintiffs. The Defendants assert that Service One is now forever barred from seeking recovery against the Plaintiffs for any amount on this project.

The Court has considered the Defendants' argument and finds it not well-taken at this time. Claim preclusion[5] is the doctrine by which a final judgment on the merits in the action precludes a party from bringing a subsequent lawsuit on the same claim or raising a new defense to defeat a prior judgment. Notredan, LLC v. Old Republic Exchange Facilitator, Co., 875 F. Supp. 2d 780, 786 (W.D. Tenn. 2012) (citing Mitchell v. Chapman, 342 F.3d 811, 819 (6th Cir. 2003)) (other citations omitted). The doctrine bars litigating a claim previously adjudicated and bars litigating a claim or defense that should have been raised in a prior suit. Id. (citing Mitchell, 343 F.3d at 819). Tennessee law applies to determine what preclusive effect the state court's judgment has upon this Court. Id. The party asserting claim preclusion must establish:

> (1) the prior decision was a final decision on the merits, (2) the present action is between the same parties or their privies as those to the prior action, (3) the claim in a present action was or should have been litigated in the prior action; and (4) an identity exists between the prior and present actions.

Id. (citing Lien v. Couch, 993 S.W.2d 53, 55-56 (Tenn. Ct. App. 1998).

Except to argue that the prior judgment was a final judgment on the merits, the Defendants failed to establish that the remaining three elements are present in this matter. See

---

[5] The "United States Supreme Court [has] expressed its preference for the use of 'claim preclusion,' rather than the more traditionally utilized term 'res judicata.'" Mitchell v. Chapman, 343 F.3d 811, 819, n.5 (6th Cir. 2003) (citing Migra v. Warren City Scho. Dist. Bd. of Educ., 465 U.S. 75, 77, n.1 (1984)).

Notredan, 875 F. Supp. at 786 (finding that the defendant failed to show that claim preclusion applied because it did not establish that the case at bar involves the same parties or their privies); see also Calaway v. Schucker, 395 F. App'x 251, 255 (6th Cir. 2010) (explaining that whether a voluntary dismissal gives rise to res judicata turns on the intent of the parties); Hall v. Liberty Ins. Corp., No. 3:13-cv-206, 2013 WL 6571928, *4 (E.D. Tenn. Dec. 13, 2013) ("Under Tennessee law, then, not all voluntary dismissals have preclusive effect, but it is the intent of the parties that drives the application of res judicata."). Accordingly, the Court finds the Defendants' arguments not well-taken, and the parties shall proceed to trial on the actual documented expenses for the security barrier gate repairs.

### (i)    Television Purchases

The parties agree that the actual documented expenses include labor in the amount of $425.97, Service One's invoice in the amount of $2,990.00,[6] and $1,770.83 worth of materials purchased from Best Buy. The parties disagree as to whether the Plaintiffs are entitled to an additional $221.61 for lodging and $27.99 for per diem purchases.

Black's Law Dictionary defines "overhead" as "business expenses (such as rent, utilities, or support-staff salaries) that cannot be allocated to a particular product or service; fixed or ordinary operating costs." (10th ed. 2014). The Court finds that the lodging and per diem purchases are overhead expenses, which the Plaintiffs are not entitled as unlicensed contractors.

### (j)    Repair Hinge

The parties agree that the Clearview Glass invoice is $1,600.00, the labor costs are $123.60, and the McDonald Dash invoice is $22.17. The Plaintiffs assert that there is an additional McDonald Dash receipt for $82.25. The Defendants assert that the additional

---

[6] In Plaintiff's Response, it asserts that the Service One's invoice is in the amount of $2,290.00. The Court believes this to be a typographical error as the invoice reflects the total amount to be $2,990.00 [Doc. 58 at 22].

McDonald Dash receipt was not on the Plaintiffs' original invoice template. In addition, the Defendants assert that the receipt is for a "DIR-Von Duprin Top Latch," which is part of the work performed for, billed to and paid by the GSA in 2013.

The Court has reviewed the receipt [Doc. 75-2 at 8] and the GSA description, which provides, "Install Von-Duprin Hardware on an Existing Door." [Doc. 58 at 139]. The GSA description states "installation," but it remains unclear whether GSA paid the $82.25 for the hardware. Accordingly, the Court finds that there is a genuine issue of material fact as to whether the Plaintiffs have received the $82.25 for the hardware.

### (k)    *Paint Kitchen, Water Leak, and Remove Mulch*

The Defendants assert that Service One submitted an invoice in the amount of $5,498.00. [Doc. 58 at 73], but the Plaintiffs submitted a Conditional Waiver and Release to Service One documenting the compromise of its claim to $4,948.20 [Doc. 58 at 74]. The Defendants allege that Plaintiffs paid $4,948.20 to Service One [Doc. 58 at 237]. In addition, the Defendants assert that when Service One filed suit to enforce its mechanic's lien, Service One alleged in its Complaint [Doc. 58 at 172] that the invoice for painting the kitchen, fixing the water leak, and removing mulch had been paid first and reduced accordingly to its pending lien claims. Thus, the Defendants argue that Service One cannot pursue the balance, and therefore, the Plaintiffs cannot establish actual documented expenses.

The Plaintiffs argue that the Conditional Waiver and Release on Progress Payments was a progress payment and not a final payment. The Plaintiffs assert that their actual documented expenses for this work equal $5,498.00.

The Court finds the Conditional Waiver and Release ambiguous for the same reasons as cited above. Accordingly, the Court finds that there is a genuine issue of material fact with respect to this work.

(l)     *Replaced Gate Motherboard*

The Defendants assert that Service One submitted an invoice in the amount of $2,511.64. [Doc. 58 at 77]. The Defendants assert that this amount was included as part of the mechanic's lien claim. The Defendants argue that Service One sued but by agreed judgment waived its claim for this amount in exchange for a release. Thus, the Defendants argue that the documented expense for this item is $0.00. The Plaintiffs maintain that its actual documented expenses equal $2,511.64 and that they are entitled to this amount because Defendants retained the benefit of this performance.

For the same reasons as cite above, the Court finds that a genuine issue of material fact exists as to the actual documented expenses for this work.

(m)     *Glass Removal Front Entrance Foyer*

The Defendants assert that the Plaintiffs provided no documented expenses that it incurred. The Plaintiffs do not respond to this allegation and do not assert what amount, if any, they are entitled for such work. Accordingly, the Court finds actual documented expenses to be $0.00.

(n)     *Escort Services*

The Defendants assert that actual labor expenses are $1,309.00 and that this amount is the total actual documented expenses for this item. The Plaintiffs agree that $1,309.00 is correct, but they also cite two Project Labor Summaries [Docs. 75-2 at 23 and 24] that show the following additional amounts: $44.23 for March Gooding, $2,434.30 for Louis Morgan, and $1,496.00 for

James Manes. [Docs. 75-2 at 23, 24]. Thus, the Plaintiffs assert that the total documented expenses for this project is $4,215.68.

In its Reply, the Defendants assert that the actual invoice for this work is dated June 14, 2012, and is in the total amount of $3,083.36 [Doc. 58 at 89], not in excess of $4,200.00. The Defendants state that attached to the invoice are the time entries for the "Building Contractor Escort" of 86 hours. [Doc. 58 at 90]. The Defendants assert that March Gooding agreed to reduce these hours by 9.5 hours, which results in 77 hours. [Doc. 58 at 11-12]. The Defendants argue that the additional Project Labor Summaries submitted by the Plaintiffs [Doc. 75-2 at 23-24] are new charges incurred after the Project was sold. The Defendants argue that they are not obligated to the Plaintiffs for expenses after the Project was sold to a third party.

The Court agrees with the Defendants that they are not liable for any costs after the project was sold. However, it is not quite clear when the charges were incurred. The date on both Project Labor Summaries is June 12, 2012, which was before the Project was sold. Accordingly, the Court finds that there is a genuine issue of material fact as to the actual documented expenses for these services.

*(o)      Sanitary and Concrete Work*

The Defendants assert that Service One submitted an invoice in the amount of $24,687.42 [Doc. 58 at 93] and that another subcontractor, OHM, submitted an invoice in the amount of $1,600.00 [Doc. 58 at 94]. With respect to the OHM invoice, the Defendants argue that OHM signed a Conditional Waiver and Release, reducing its claim to $1,147.52 and provided a full release of all claims to the balance. [Doc. 58 at 96].

With respect to the amount charged by Service One, the Defendants assert that this amount was included as part of its mechanic lien. The Defendants assert that the Plaintiffs

submitted a Conditional Waiver and Release to Service One documenting the compromise of its claim to $17,705.82 [Doc. 58 at 95]. The Defendants aver that the Plaintiffs paid this amount [Doc. 58 at 238]. The Defendants allege that when Service One sued to enforce its mechanic's lien, Service One only sued to enforce a claim of $6,981.00, the difference between $24,687.42 and $17,705.82. The Defendant argues that Service One went to judgment, and therefore, waived its claim to the $6,981.00. The Defendants conclude that the actual documented expenses for this project equal $18,853.34 ($17,705.82 + $1,147.52).

The Plaintiffs assert that the total documented expenses for this project equal $26,287.42. The Plaintiffs argue that with respect to both releases, they were only conditional waivers and not a final payment.

The Court finds the Conditional Waivers and Releases ambiguous. Accordingly, for the same reasons as cited above, the Court finds there is genuine issue of material fact as to the actual documented expenses for sanitary and concrete work.

*(p)    Miscellaneous Projects*

On a number of projects, the Defendants have moved this Court to determine the actual documented expenses, and they have submitted invoices for each project in support of the actual documented expenses. The Plaintiffs have either failed to respond or agree with the Defendants' assertions. Accordingly, the Court finds the actual documented expenses for the following projects as stated below:

> (1) Carpet [Docs. 58 at 24, 102]: The actual documented expenses equal $5,567.79;
>
> (2) Install Threshold [Doc. 58 at 28, 103]: The actual documented expenses equal $988.32.[7]

---

[7] The Defendants assert that the actual documented expenses are $988.34. However, the invoices are for $764.30 [Doc. 58 at 28] and $224.02 [Doc. 58 at 103], which equals $988.32.

19

(3) Painting Various Rooms [Doc. 58 at 32, 104, 112]. The actual documented expenses equal $9,360.60.

(4) Expansion Joint and Mentromont Escort [Doc. 58 at 35, 36, 105, 113]. The actual documented expenses equal $9,435.60.

(5) Repair Door and Vent at PG Stair Exit [Doc. 58 at 43, 107, 115]. The actual documented expenses equal $4,052.60.

(6) Handicap Lift/Move Door [Doc. 58 at 46, 108, 116]. The actual documented expenses equal $3,188.60.

(7) Paint Three Evidence Boxes [Doc. 58 at 49, 109, 117]. The actual documented expenses equal $1,038.12.

(8) Install Chair Rail: The parties agree that the actual documented expenses equal $993.98.[8]

(9) Remove Wallpaper Glue [Docs. 58 at 56, 127-28]. The actual documented expenses equal $629.17.

(10) Caulk Connectors [Doc. 58 at 120]. The actual documented expenses equal $170.00.

(11) Repair Gates [Doc. 58 at 79]. The actual documented expenses equal $524.00.

**B.    Voluntary Payments Received from Plaintiffs' Unclaimed Expenses**

The Defendants assert that under Tennessee law, an unlicensed contract must subtract voluntary payments received from its claimed unpaid expenses. The Defendants assert that they are entitled to a set-off in the amount of $144,931.20. The Plaintiffs do not respond to this argument, but they have agreed that they were paid in the amount of $144,931.20.

Accordingly, the Court finds that Defendant Knoxbi is entitled to set off the $144,931.20 from the Plaintiffs' claimed unpaid expenses.

---

[8] The Plaintiffs state that the total documented expenses are $994.50. However, this appears to be a mathematical error as $322.57 + $58.97 + $136.00 + $454.32 + $22.12 = $993.98.

### C. Recovery on Defendant Knoxbi's Counterclaim

The Defendants assert that Defendant Knoxbi is entitled to recover on its counterclaim the amount paid that exceeds the Plaintiffs' actual expenses. The Defendants request that the Court grant partial summary judgment to Defendant Knoxbi on its counterclaim in the minimum of an overpayment of $43,151.19. The Court finds this issue premature because it is not clear at this stage whether the Plaintiffs were overpaid or underpaid. Accordingly, the Court will deny the Defendants' request at this time.

### D. Liability as to Defendant Carnegie

The Defendants assert that Defendant Carnegie cannot be held liable under Tennessee Code Annotated § 62-6-103(b). The Defendants argue that the undisputed facts establish that Defendant Carnegie implicitly acknowledges that it and Defendant Knoxbi are separate entities. The Defendants submit that Defendant Carnegie only acted as the agent manager of Defendant Knoxbi. Finally, the Defendants assert that the Plaintiffs executed documents establishing that their contracts were directly with Defendant Knoxbi and that there was no intent for Defendant Carnegie to be bound.

The Plaintiffs assert that documents cited by the Defendants may be evidence that Defendant Carnegie was an acting agent for a disclosed principal, but the documents are not dispositive. The Plaintiffs assert that there is evidence to the contrary, and they cite a number of documents, including their responses to interrogatories, the Amended Complaint, and an email. The Plaintiffs assert that there is a question of fact that exists as to whether Defendant Carnegie contracted with the Plaintiffs. Finally, the Plaintiffs assert that Defendant Carnegie made express unconditional written promises to the Plaintiffs that all invoices would be paid.

The Tennessee Court of Appeals stated as follows, "It is a well-settled principal of law that, in order for an agent to avoid personal liability on a contract negotiated on behalf of the agent's principal, 'the agent must disclose not only the fact of the agency, but also the identity of the principal.'" ICG Link, Inc., v. Steen, 363 S.W.3d 533, 550 (Tenn. Ct. App. 2011) (citing Siler v. Perkins, 149 S.W. 1060 (Tenn. 1912); Remote Woodyards, LLC v. Neisler, 340 S.W.3d 411, 417 (Tenn. Ct. App. 2009)); see also Appolo Fuels, Inc. v. Claiborne Heavy Hauling, LLC, No. 3:11-cv-467, 2015 WL 5157473, *9 (E.D. Tenn. Sept. 2, 2015) (quoting ICG Link).

In the instant matter, the Court finds that Defendant Carnegie was the acting agent for the disclosed principal, Defendant Knoxbi. The Court has reviewed the cited material by the Plaintiffs and finds that the documents cited do not create a genuine issue of material fact. With respect to the February 12, 2012 letter to Defendant Carnegie, the letter just addresses the scope of work to be completed on the Sanitary Sewer Manhole. Moreover, the Court notes that the Payment Request for the Sanitary and Concrete Work [Doc. 40-4 at 14] was sent to Defendant Knoxbi. With respect to the email [Doc. 74-1 at 1] from David Taft to Louis Morgan, it states, "As we discussed. All invoices will be paid." This email does not bind Defendant Carnegie, especially since it was sent several months after the contract between Plaintiff Katmai and Defendant Knoxbi was executed. In addition, the email does not state that Defendant Carnegie will pay the invoices. Accordingly, the Court finds that Defendant Carnegie is hereby **DISMISSED**.

## V.    CONCLUSION

For the reasons cited above, the Court finds Defendant/Counter-Plaintiff Knoxbi Company, LLC's and Defendant Carnegie Management & Development Corporation's Motion for Summary Judgment and Motion for Partial Summary Judgment on Knoxbi's Counterclaim

[**Doc. 56**] to be **GRANTED IN PART AND DENIED IN PART**. Defendant Carnegie Management & Development Corporation is hereby **DISMISSED**.

      **IT IS SO ORDERED**.

                    ENTER:

                    United States Magistrate Judge